**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
CHYANNE SMITH,

                          *Plaintiff*,

     *v.*

BED BATH & BEYOND, INC., DEREK SCOTT,
individually, and RAY NOVAK, individually,

                         *Defendants*.
------------------------------------------------------------------------X

**17 CV 2240**

**COMPLAINT**

        Plaintiff Chyanne Smith, by counsel, The Harman Firm, LLP, alleges for her Complaint against Defendants Bed Bath & Beyond, Inc., Derek Scott, and Ray Novak as follows:

<u>**NATURE OF THE ACTION**</u>

        1.     Plaintiff Chyanne Smith ("Plaintiff" or "Ms. Smith"), a transgender woman, brings this action against her former employer, Defendant Bed Bath & Beyond, Inc. ("Corporate Defendant" or "Bed Bath & Beyond"); Defendant Derek Scott, her former supervisor at Corporate Defendant ("Defendant Scott" or "Mr. Scott"); and Defendant Ray Novak, her former supervisor at Corporate Defendant ("Defendant Novak" or "Mr. Novak") (collectively, "Defendants") for discriminating against her on the basis of her sex and her transgender status and retaliating against her for her complaints of discrimination.

        2.     Bed Bath & Beyond's management and non-management, as well as third parties within Bed Bath & Beyond's control, harassed, intimidated, and humiliated Ms. Smith because of her sex and because she did not conform to their expectations of gendered behavior.  After Ms. Smith's repeated complaints about this discrimination, Corporate Defendant terminated Ms. Smith's employment.

3.      Ms. Smith seeks damages and costs against Corporate Defendant for discriminating against her on the basis of sex by subjecting her to a hostile work environment and ultimately terminating her employment based on her sex and in retaliation for her complaints of sex-based discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.

4.      Ms. Smith also seeks damages and costs against all Defendants for discriminating against her on the basis of gender by subjecting her to a hostile work environment and ultimately terminating her employment because of her gender identity and in retaliation for her complaints of gender identity–based discrimination, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

5.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's Title VII claims.

6.      Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the Title VII claims that they form part of the same case or controversy.

7.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

8.      All conditions precedent to maintaining this action have been fulfilled.  Ms. Smith filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a Right-to-Sue letter dated December 29, 2016, relating to the discriminatory acts described in this Complaint.  This action was properly instituted within 90

days of the issuance of the Right-to-Sue letter.

## TRIAL BY JURY

9.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

10.     At all times relevant hereto, Plaintiff was a resident of Bronx County in the State of New York.  Plaintiff currently resides in Kings County in the State of New York.

11.     Upon information and belief, at all times relevant hereto, Corporate Defendant was and is a corporation organized under the laws of the State of New York, with headquarters located at 650 Liberty Ave, Union, New Jersey 07083.

12.     Upon information and belief, at all times relevant hereto, Defendant Scott was and is a resident of the State of New York and an employee of Corporate Defendant.

13.     Upon information and belief, at all times relevant hereto, Defendant Novak was and is a resident of the State of New York and an employee of Corporate Defendant.

## STATEMENT OF FACTS

14.     On or about August 18, 2015, Ms. Smith began working for Bed Bath & Beyond as a Hardside Replenisher at its 610 Exterior Street, Bronx, NY 10451 location (the "Store").

15.     Bed Bath & Beyond subjected Ms. Smith to discrimination and harassment based on her sex and gender identity throughout her employment.

16.     On Ms. Smith's first day of work, a Bed Bath & Beyond Floor Manager, known to Ms. Smith only as "Stephanie," told Ms. Smith, looking at Ms. Smith's groin, "I'm not sure what you have [referring to Ms. Smith's genitals], but I would feel more comfortable if you would use the bathroom when I'm not in there."

17.     That same day, one of Ms. Smith's male coworkers threatened to physically

assault Ms. Smith if she used the women's restroom: "A lot of the males around here are messing around with some of the girls here.  So, just so you don't have any problems when you get to the parking lot, just respect people's wishes.  Don't use the women's bathroom if my girl is in there."

18.     Shortly afterward, another of Ms. Smith's male coworkers told Ms. Smith, "If I'm in the bathroom, don't use it."

19.     Ms. Smith immediately complained to Defendant Scott, her immediate supervisor.

20.     Rather than addressing Ms. Smith's complaint, Defendant Scott dismissed her concerns and replied, "Well, what do you expect?"

21.     Defendant Scott then pointed at Ms. Smith's breasts and asked, "Are those real?  Are they yours?  How do they look?"

22.     Ms. Smith was offended and humiliated by Defendant Scott's highly inappropriate, harassing behavior.

23.     Ms. Smith, distressed and deeply upset, immediately called a female manager in Bed Bath & Beyond's Human Resources ("HR") Department, known to Ms. Smith only as "Kim," to complain about the discrimination and to request a transfer to a different location.

24.     Kim did not answer the phone, so Ms. Smith left a message, saying, "I'm uncomfortable in the Store.  Can we call and talk about it?"

25.     Kim never responded to Ms. Smith's call.

26.     Ms. Smith complained to Defendant Scott about the harassment, as well, and again requested a transfer.

27.     Defendant Scott only responded, "Every time you complain to HR, it's going to come back to me.  Stop complaining.  You're getting off on the wrong foot."

28.     Bed Bath & Beyond took no action to address Ms. Smith's complaints, and the discrimination and harassment continued.

29.     Due to Bed Bath & Beyond's failure to respond, and afraid for her safety in the Store's restrooms after her coworkers' threats and harassment, Ms. Smith began using the bathroom at Best Buy, another store nearby.

30.     Defendant Novak, another of Ms. Smith's supervisors, made hostile and discriminatory comments to Ms. Smith about her gender identity throughout her employment.

31.     Shortly after Ms. Smith began work at Bed Bath & Beyond, Defendant Novak told Ms. Smith, "I've never come across a faggot like you before."

32.     Ms. Smith told Defendant Novak that his comment was highly offensive.

33.     In response, Defendant Novak subjected Ms. Smith to increased discrimination and harassment.

34.     Defendant Novak constantly referred to Ms. Smith with transphobic and homophobic slurs, such as "shim" (a pejorative term for transgender people) and "faggot," rather than by her name.

35.     Defendant Novak made comments intended to invalidate Ms. Smith's gender identity, such as derisively calling her "bro" and referring to her as a "man" or a "trans man."

36.     Other Bed Bath & Beyond employees frequently made similar discriminatory comments about Ms. Smith's gender identity.

37.     Another coworker referred to Ms. Smith as "Mister," then sarcastically added, "Oh, I'm sorry, 'Miss.'"

38.     Other coworkers asked Ms. Smith if she was a "he or she" and suggested that she was "confused" about her gender.

39.    On one occasion, when Ms. Smith asked a male Bed Bath & Beyond employee to help her stock products, the employee refused, telling Ms. Smith, "I don't talk to no mooks and no faggots."

40.    On or about September 1, 2015, a security guard stationed inside of Bed Bath & Beyond, known to Ms. Smith only as "Louis," cornered Ms. Smith and aggressively asked her to perform oral sex on him.

41.    Ms. Smith, extremely frightened and disturbed, immediately rejected Louis' unwanted advances.

42.    Later that day, Louis again sexually harassed Ms. Smith, exposing his penis to her while she was working in the Store's Bridal Desk area.

43.    Ms. Smith reported Louis' sexual harassment to Defendant Scott.

44.    Defendant Scott not only dismissed Ms. Smith's complaints, but chastised her for complaining, stating, "I'm tired of getting all these complaints.  Are you sure this is the right job for you?"

45.    Bed Bath & Beyond did nothing to address Louis' conduct, and he continued to behave in harassing and extremely inappropriate ways.

46.    Louis continued to expose himself to and masturbate in front of Ms. Smith and similarly harassed other female Bed Bath & Beyond employees.

47.    Ms. Smith complained to Kim again, who said only that "she would look into it."

48.    However, Ms. Smith never heard back from Kim.

49.    On or about September 17, 2015, Christine Jennings, Ms. Smith's training supervisor, told a teenage male Bed Bath & Beyond customer that Ms. Smith was a "tranny" and told the customer to follow Ms. Smith into the women's restroom.

50.     When Ms. Smith next went to use the restroom, the customer followed her without her knowledge.

51.     When Ms. Smith left the bathroom stall, she found the customer waiting for her in the restroom.

52.     Ms. Smith, shocked and frightened, screamed and told the customer to leave.

53.     The customer refused to leave and instead asked Ms. Smith invasive, highly offensive questions about her gender: "[Christine] told me that you are a tranny.  Is that true, are you a guy dressed as a girl?"

54.     Ms. Smith again told the customer to leave, and the customer rushed out of the restroom.

55.     Ms. Smith immediately complained to a Bed Bath & Beyond Assistant Store Manager, known to her only as "James," about being followed and harassed in the women's bathroom.

56.     On or about September 22, 2015, Ms. Smith was called to a meeting with two members of the Bed Bath & Beyond HR Department: Lauren Alvarez, Regional HR Manager for Bed Bath & Beyond's New York City district, and Tonya Jackson, HR Manager.

57.     Ms. Alvarez and Ms. Jackson instructed Ms. Smith to write a statement about the "bathroom incident."

58.     However, Ms. Alvarez and Ms. Jackson blamed Ms. Smith for the customer's harassment and attempted to dictate to Ms. Smith what she should include in her statement, instructing her to lie about and minimize the severity of the incident.

59.     Ms. Smith requested permission to contact the police, but Ms. Alvarez and Ms. Jackson refused, telling her hurriedly, "No, there's no reason to get the police involved," and told

her she could not contact the police.

60.     Ms. Alvarez and Ms. Jackson then suspended Ms. Smith for the rest of the day with pay under the pretext that Bed Bath & Beyond would be "investigating [her] allegations."

61.     On or about September 23, 2015, Bed Bath & Beyond contacted Ms. Smith to advise her to return to work for her next scheduled shift because Bed Bath & Beyond was "unable to substantiate the customer's complaint."

62.     Despite her discomfort and fear about returning to the location where she had experienced such severe discrimination and harassment, Ms. Smith complied with Bed Bath & Beyond's directive, afraid of losing her job.

63.     In and around October 2015, Ms. Smith was harassed on several occasions by a Bed Bath & Beyond customer, a man who appeared to be in his forties.

64.     On the first occasion, the customer spoke to Ms. Smith inappropriately, telling her that she had "nice boobs."

65.     Ms. Smith rejected his advances and told the customer that he was being inappropriate.

66.     The customer responded by further sexually harassing Ms. Smith, telling her, "But the way I'd lick your nipples would be so appropriate."

67.     Ms. Smith felt threatened and deeply uncomfortable.

68.     She complained to Ms. Jennings about the customer's conduct.

69.     Ms. Jennings told Ms. Smith to "stay with the customer" and she would "let loss prevention handle it."

70.     On or about October 17, 2015, Ms. Smith was cleaning the Store's soft kitchen area when she saw the same customer staring at her, licking his lips, and masturbating.  The

customer then ejaculated onto the floor in front of Ms. Smith.

71.     Ms. Smith immediately called James and reported what had happened.

72.     James called another employee, known to Ms. Smith only as "Gustavo," to clean up the floor.

73.     The customer ran away from the scene without Bed Bath & Beyond's addressing the situation.

74.     Ms. Smith was shocked, disgusted, and visibly upset.  She was afraid that the customer might be waiting for her and wanted to call the police.

75.     James reported the incident to Defendant Scott, who prohibited Ms. Smith from calling the police or from leaving the Store.

76.     That same day, Ms. Smith contacted Ms. Alvarez to complain, leaving a message for her about the incident and Defendant Scott's refusal to let her call the police.

77.     After Ms. Smith's shift, James called Ms. Smith to come back to the Store because "we have to call 911."

78.     James never explained to Ms. Smith the reason for this abrupt change.

79.     Ms. Smith went back to the Store, and James and Ms. Smith called the police together.

80.     The police reviewed the security footage and confirmed Ms. Smith's recollection of the event.

81.     Ms. Smith filed a report with the police.

82.     HR viewed the video recording of the incident, confirming Ms. Smith's report of sexual harassment, but refused to transfer Ms. Smith or otherwise address the situation.

83.     On or about October 23, 2015, frustrated by Bed Bath & Beyond's refusal to

address the ongoing discrimination and harassment, Ms. Smith again complained to Ms. Alvarez via phone.

84.    Ms. Smith specifically complained to Ms. Alvarez that Defendant Novak was creating a hostile work environment by constantly harassing her about her gender identity and requested to be transferred to a different department.

85.    Ms. Alvarez dismissed Ms. Smith's complaint and transfer request and forced her to continue working with her harassers, telling her, "If you leave the floor, you're fired."

86.    Ms. Smith complained to Ms. Alvarez again in and around mid-November 2015, but to no avail.

87.    On or about December 8, 2015, Ms. Smith discovered that Bed Bath & Beyond had cut her hours.

88.    That same day, Ms. Smith met with Defendant Scott and complained to him about the reduced hours, stating, "I think this is retaliation for my complaint about [Defendant Novak's] harassment."

89.    Rather than address Ms. Smith's concerns, Defendant Scott again suggested that Ms. Smith quit her job, repeating, "Are you sure this is the right job for you?"

90.    On or about the following day, December 9, 2015, which was Ms. Smith's day off, Bed Bath & Beyond HR Manager Gerald Phillips called Ms. Smith at home.

91.    Mr. Phillips told Ms. Smith that he had "heard a rumor" about her and asked if she was free to discuss the "rumor."

92.    Ms. Smith asked Mr. Phillips if they could discuss the issue when she arrived at work the next day; Mr. Phillips agreed.

93.    Ms. Smith arrived at Bed Bath & Beyond for work on or about the following day,

December 10, 2015, and clocked in as usual.

94.     Shortly after Ms. Smith clocked in, Mr. Phillips called her to a meeting in his office, where he told her that he had heard a "rumor" that she had resigned.

95.     Ms. Smith was shocked by Mr. Phillips' statement, as she had never resigned.

96.     She immediately told Mr. Phillips that she had never resigned and asked him when she had supposedly resigned.

97.     Mr. Phillips replied that she had resigned the previous day.

98.     Ms. Smith reiterated that she had never resigned, reminding Mr. Phillips that she had arrived at work as usual that day and asking why she would have done so if she had supposedly resigned.

99.     Mr. Phillips evaded Ms. Smith's questions and refused to elaborate, telling her, "Okay, just go back to work.  We'll talk later."

100.    Ms. Smith went back to work and worked for approximately an hour without incident, until she received a page instructing her to come to Mr. Phillips' office.

101.    Ms. Smith went to Mr. Phillips' office, as instructed.

102.    Mr. Phillips then told Ms. Smith, "After discussing it with [Ms. Alvarez], she feels that you have to go home, and we'll do some more investigation and get back to you."

103.    Ms. Smith asked if Bed Bath & Beyond was suspending her employment.

104.    Mr. Phillips responded, "Yeah, right now," and said that Bed Bath & Beyond would pay her for the day.

105.    On or about the following day, December 11, 2015, Mr. Phillips called Ms. Smith and told her, "We accept your resignation."

106.    Ms. Smith yet again attempted to tell Mr. Phillips that she had not resigned, but

Mr. Phillips continued to insist that she had resigned and refused to put her on the schedule or discuss the matter with her further.

107.    As a result, Bed Bath & Beyond terminated Ms. Smith's employment on or about December 10, 2015.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII
### (Against Corporate Defendant)

108.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 107 with the same force as though separately alleged herein.

109.    Title VII prohibits an employer from discriminating against an employee in compensation, terms, privileges, or conditions of employment on the basis of sex.

110.    Corporate Defendant discriminated against Plaintiff on the basis of sex by subjecting her to a hostile work environment because of her sex.

111.    As a direct and proximate consequence of Corporate Defendant's sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

112.    Corporate Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Corporate Defendant.

### SECOND CAUSE OF ACTION
### Wrongful Termination in Violation of Title VII
### (Against Corporate Defendant)

113.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 112 with the same force as though separately alleged herein.

114.    Title VII prohibits an employer from discriminating against an employee in

compensation, terms, privileges, or conditions of employment on the basis of sex.

115.    Corporate Defendant discriminated against Plaintiff on the basis of sex by terminating her employment because of her sex.

116.    As a direct and proximate consequence of Corporate Defendant's sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

117.    Corporate Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Corporate Defendant.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII
### (Against Corporate Defendant)

118.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 117 with the same force as though separately alleged herein.

119.    Title VII prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII.

120.    Plaintiff engaged in protected activity when she properly complained to Corporate Defendant of discriminatory practices illegal under Title VII.

121.    Corporate Defendant retaliated against Plaintiff for her complaints by subjecting her to further discrimination and harassment and, ultimately, terminating her employment.

122.    As a direct and proximate consequence of Corporate Defendant's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL
### (Against All Defendants)

123.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 122 with the same force as though separately alleged herein.

124.     The NYCHRL prohibits an employer from discriminating against an employee on the basis of gender.

125.     Defendants discriminated against Plaintiff on the basis of gender by subjecting her to a hostile work environment because she is a transgender woman.

126.     As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

127.     Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## FIFTH CAUSE OF ACTION
### Unlawful Termination in Violation of the NYCHRL
### (Against All Defendants)

128.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 127 with the same force as though separately alleged herein.

129.     The NYCHRL prohibits an employer from discriminating against an employee on the basis of gender.

130.     Defendants discriminated against Plaintiff by terminating her employment because she is a transgender woman.

131.     As a direct and proximate consequence of Defendants' gender discrimination,

Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

132.    Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**SIXTH CAUSE OF ACTION**
**Retaliation in Violation of the NYCHRL**
**(Against All Defendants)**

133.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 132 with the same force as though separately alleged herein.

134.    The NYCHRL prohibits an employer from retaliating against an employee for engaging in protected activity under the NYCHRL.

135.    Plaintiff engaged in protected activity when she properly complained to Defendants about discriminatory practices illegal under the NYCHRL.

136.    Defendants retaliated against Plaintiff by subjecting her to further discrimination and harassment and, ultimately, terminating her employment.

137.    As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, the individually named Plaintiff respectfully requests that this Court

grant the following relief:

A.      on Plaintiff's first claim, damages to be determined at trial;

B.      on Plaintiff's second claim, damages to be determined at trial;

C.      on Plaintiff's third claim, damages to be determined at trial;

D.      on Plaintiff's fourth claim, damages to be determined at trial;

E.      on Plaintiff's fifth claim, damages to be determined at trial;

F.      on Plaintiff's sixth claim, damages to be determined at trial; and

G.      such other and further relief as this Court deems appropriate.

Dated:  New York, New York
        March 28, 2017

By:     _____

        Walker G. Harman, Jr. [WH-8044]
        Edgar M. Rivera [ER-1378]
        THE HARMAN FIRM, LLP
        220 Fifth Avenue, Suite 900
        New York, New York 10001
        (212) 425-2600
        wharman@theharmanfirm.com
        erivera@theharmanfirm.com

        *Attorneys for Plaintiff*